[Cite as *Simmons v. Extendicare Health Servs., Inc.*, 2016-Ohio-4831.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| RUTH B. SIMMONS | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 15 CAE 12 0095 |
| | : | |
| EXTENDICARE HEALTH SERVICES, | : | |
| INC., ET AL. | : | |
| | : | |
| | : | |
| Defendants-Appellants | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Delaware County Court
                                of Common Pleas, Case No. 15 CVA 04
                                0221



JUDGMENT:                       AFFIRMED




DATE OF JUDGMENT ENTRY:         July 5, 2016




APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

JAMES D. COLNER                         G. BRENDA COEY
ADAM M. GALAT                           1300 East 9th Street, Suite 1950
41 South High Street, Suite 2400        Cleveland, OH 44114
Columbus, OH 43215

*Delaney, J.*

{¶1}   Defendants-Appellants Extendicare Health Services, Inc., Progressive Step Corporation, and Delaware Care, LLC dba the Arbors at Delaware appeal the November 12, 2015 judgment entry of the Delaware County Court of Common Pleas.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   On March 19, 2014, Harold B. Simmons, 88 years old, was admitted to Defendant-Appellant Delaware Care, LLC dba the Arbors at Delaware for rehabilitation and physical therapy following gallbladder surgery. The Arbors at Delaware is nursing facility owned and operated by Defendant-Appellant Extendicare Health Services, Inc. The Defendants-Appellants will be hereinafter referred to as "Extendicare."

{¶3}   When Mr. Simmons was admitted to Arbors at Delaware, his family stated he could use a walker, dress and feed himself, and ambulate to the bathroom without assistance. There was no testimony that Mr. Simmons was incompetent at the time of admission. Mr. Simmons did not have a durable power of attorney for business, financial, or legal decisions. On October 9, 2013, Mr. Simmons executed a Health Care Power of Attorney naming his wife, Plaintiff-Appellee Ruth B. Simmons as his agent to make health care decisions for him if he could not make health care decisions for himself. When Mr. Simmons was admitted to Arbors at Delaware, the nursing facility requested Mrs. Simmons complete the forms necessary for her husband's admission to the facility. Mrs. Simmons stated that no explanation was given to her regarding the content of the paperwork.

{¶4}   One of the forms Mrs. Simmons was asked to sign was an Alternative Dispute Resolution Agreement for Ohio ("ADR"). The ADR noted that "signing this

agreement is not a condition of admission to or continued residence in the center." The ADR stated in pertinent part:

1. **<u>Parties to the Agreement</u>**. This Alternative Dispute Resolution ("ADR") (hereinafter referred to as the "Agreement") is entered into by Extendicare Health Services, Inc. on behalf of its parents, affiliates and subsidiaries including <u>Arbors at Delaware</u> (hereinafter referred to as the "Center"), a nursing facility and <u>Harold Simmons</u>, a Resident at the Center (hereinafter referred to as "Resident"). It is the intent of the Parties that this Agreement shall inure to the benefit of, bind, and survive the Parties, their heirs, successors, and assigns.

1. **<u>Definitions</u>**.

* * *

b. Resident as used in this Agreement shall refer to the Resident, all persons whose claim is or may be derived through or on behalf of the Resident, all persons entitled to bring a claim on behalf of the Resident, including any personal representative, responsible party, guardian, executor, administrator, legal representative, agent, or heir of the Resident, and any person who has executed this Agreement on behalf of the Resident.

* * *

THE PARTIES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT BY ENTERING INTO THIS AGREEMENT THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTE DECIDED BY A

COURT OF LAW OR TO APPEAL ANY DECISION OR AWARD OF DAMAGES RESULTING FROM THE ADR PROCESS EXCEPT AS PROVIDED HEREIN. THIS AGREEMENT GOVERNS IMPORTANT LEGAL RIGHTS. YOUR SIGNATURE BELOW INDICATES YOUR UNDERSTANDING OF AND AGREEMENT TO THE TERMS SET OUT ABOVE. PLEASE READ IT COMPLETELY, THOROUGHLY AND CAREFULLY BEFORE SIGNING. INITIALS

R.S.[initials of Mrs. Simmons] Resident

DM [initials of Extendicare employee] Center

* * *

If signed by a Legal Representative, the representative certifies that the Center may reasonably rely upon the validity and authority of the Representative's signature based upon actual, implied or apparerr [sic] authority to execute this Agreement as granted by the Resident.

{¶5} The signature page at the end of the ADR form states, "FOR THE RESIDENT" and underneath, the ADR form requests the signature of the Resident. On the line requesting the signature of the Resident, Mrs. Simmons printed "Harold Simmons" and signed her name "Ruth Simmons". The signature page also has lines providing for the signature of the Legal Representative for Healthcare Decisions and Legal Representative for Financial Decisions, including relationship and title. These signature lines are blank.

{¶6} On April 9, 2014, Mr. Simmons fell at the facility. He was transferred to the hospital on April 25, 2014. It was determined that Mr. Simmons refractured or displaced

chronic but previously healed fractures in the C2 and C1 vertebrae in his neck. Mr. Simmons passed away on May 8, 2014. The cause of death was listed in the death certificate as "cervical fracture with spinal cord compression."

{¶7} On January 16, 2015, Mrs. Simmons, as Executrix of the Estate of Harold B. Simmons, filed suit for wrongful death and negligence based on the injuries sustained by Mr. Simmons. The original complaint was filed in Franklin County. Extendicare filed an answer and raised the ADR as an affirmative defense. Extendicare also filed a motion to transfer venue to Delaware County, which was granted on March 19, 2015.

{¶8} After the matter was transferred to the Delaware County Court of Common Pleas, the parties engaged in discovery and Extendicare took the deposition of Mrs. Simmons. On June 4, 2015, Extendicare filed a motion to stay the proceedings and enforce the ADR signed by Mrs. Simmons. Extendicare argued the ADR was enforceable under R.C. 2711, et seq. because the ADR was not procedurally or substantively unconscionable. Mrs. Simmons responded to the motion to stay, arguing the ADR was not enforceable. Mrs. Simmons argued she did not have authority to execute the ADR on behalf of Mr. Simmons. She further contended the ADR was unconscionable and Extendicare waived its right to enforce the ADR. Extendicare responded to the motion challenging that Mrs. Simmons had apparent authority to enter into the ADR, therefore rendering the ADR enforceable.

{¶9} On November 12, 2015, the trial court denied Extendicare's motion to stay proceedings and enforce the ADR. The trial court included Civ.R. 54(B) language stating the judgment was a final appealable order.

{¶10} It is from this judgment Extendicare now appeals.

**ASSIGNMENT OF ERROR**

{¶11} Extendicare raises one Assignment of Error:

{¶12} "THE TRIAL COURT ERRED IN DENYING DEFENDANT'S-APPELLANT'S MOTION TO STAY PROCEEDINGS AND COMPEL/ENFORCE ALTERNATIVE DISPUTE RESOLUTION."

**ANALYSIS**

**Standard of Review**

{¶13} In general, an appellate court reviews a trial court's decision to grant or deny a motion to compel arbitration or stay the proceedings under the abuse of discretion standard of review. *Primmer v. Healthcare Industries Corp.*, 2015-Ohio-4104, 43 N.E.3d 788, ¶ 8 (4th Dist.); *Scott v. Kindred Transitional Care & Rehab.*, 8th Dist. Cuyahoga No. 103256, 2016-Ohio-495, ¶ 4. However, the issue of whether a controversy is arbitrable under an arbitration provision of a contract is a question of law for the court to decide; therefore, the standard of review on those issues is de novo. *Church v. Fleishour Homes, Inc.*, 172 Ohio App.3d 205, 172 Ohio App.3d 205, ¶ 9 (5th Dist. 2007). When the validity of an arbitration agreement is in question, the determination involves a mixed question of law and fact. *Scott v. Kindred Transitional Care & Rehab.*, 2016-Ohio-495, ¶ 4 citing *Corl v. Thomas & King*, 10th Dist. Franklin No. 05AP-1128, 2006-Ohio-2956, ¶ 10.

**Apparent Authority**

{¶14} There is no dispute in this case that Mr. Simmons did not execute the ADR. On appeal, Extendicare argues Mrs. Simmons had apparent authority to bind Mr. Simmons under agency law. Mrs. Simmons contends Extendicare waived this argument because it failed to raise the issue before the trial court in its motion to stay the

proceedings and to enforce the ADR. It was not until its reply motion that Extendicare touched upon the issue of apparent authority. We agree with Mrs. Simmons that Extendicare did not fully develop this argument before the trial court. However, we will consider the merits of Extendicare's argument on appeal as to apparent authority.

{¶15} "The relationship of principal and agent, and the resultant liability of the principal for the acts of the agent, may be created by the express grant of authority by the principal. Absent express agency, the relation may be one of implied or apparent agency." *Master Consolidated Corp. v. BancOhio Natl. Bank*, 61 Ohio St.3d 570, 574, 575 N.E.2d 817 (1991). Apparent agency exists "where one who is assuming to act as an agent for a party in the making of a contract but in fact has no actual authority to do so, such party will nonetheless be bound by the contract 'if such party has by his words or conduct, reasonably interpreted, caused the other party to the contract to believe that the one assuming to act as agent had the necessary authority to make the contract.' " *Scott*, 2016-Ohio-495, ¶ 13 quoting *Master Consolidated*, 61 Ohio St.3d at 576 quoting *Miller v. Wick Bldg. Co.*, 154 Ohio St. 93, 93 N.E.2d 467 (1950).

{¶16} In order for a principal to be bound by the acts of his agent under the theory of apparent agency, evidence must affirmatively show: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority. *Master Consolidated Corp.,* 61 Ohio St.3d at syllabus. The burden of proving that apparent authority exists rests upon the party asserting the agency. *Scott* at ¶ 15 citing *Irving*

*Leasing Corp. v. M & H Tire Co.*, 16 Ohio App.3d 191, 475 N.E.2d 127 (2nd Dist.1984). In this case, Extendicare must establish that Mrs. Simmons had apparent authority to enter into the arbitration agreement on Mr. Simmons's behalf.

{¶17} It is the acts of the principal, not the acts of the agent, that create apparent authority. *Master Consolidated,* 61 Ohio St.3d at syllabus. "The principal is responsible for the agent's acts only when the principal has clothed the agent with apparent authority and not when the agent's own conduct has created the apparent authority." *Primmer*, 2015-Ohio-4104, ¶ 26 quoting *Ohio State Bar Assn. v. Martin*, 118 Ohio St.3d 119, 2008-Ohio-1809, 886 N.E.2d 827, ¶ 41.

**Extendicare Does Not Establish Apparent Authority**

{¶18} Reviewing the underlying record, we find Extendicare failed to demonstrate that Mrs. Simmons had apparent authority to bind Mr. Simmons to the ADR.

{¶19} The first prong requires Extendicare to establish that Mr. Simmons, the principal, held Mrs. Simmons, the alleged agent, out to the public as possessing sufficient authority to bind him to the ADR. Mrs. Simmons signed the paperwork for Mr. Simmons's admission to the nursing facility. The ADR was not a precondition to admission to the nursing facility. There is no evidence in the record showing that Mr. Simmons held out Mrs. Simmons as possessing sufficient authority to enter into the ADR on his behalf. The record is silent as to whether Mr. Simmons knew about the ADR. It is unknown whether Mr. Simmons was with Mrs. Simmons when she signed the admission forms, including the arbitration agreement. *See Scott v. Kindred Transitional Care & Rehab.*, 8th Dist. Cuyahoga No. 103256, 2016-Ohio-495, ¶ 17 citing *Lang v. Beachwood Pointe Care Ctr.*, 8th Dist. Cuyahoga No. 100109, 2014-Ohio-1238, ¶ 6, *appeal not accepted*, 140 Ohio

St.3d 1415, 2014-Ohio-3785, 15 N.E.3d 884; *See also Primmer v. Healthcare Industries Corp.*, 2015-Ohio-4104, 43 N.E.3d 788, ¶ 25 (4th Dist.).

{¶20} The second prong of the apparent authority analysis requires Extendicare to prove that it, acting in good faith, had reason to believe that Mrs. Simmons possessed the authority to bind Mr. Simmons to the terms of the ADR. There is no factual dispute that Mrs. Simmons was not the legal representative for Mr. Simmons. Mr. Simmons did not grant Mrs. Simmons a durable power of attorney for business, financial, or legal decisions. On October 9, 2013, Mr. Simmons executed a Health Care Power of Attorney naming his wife, Plaintiff-Appellee Ruth B. Simmons as his agent to make health care decisions for him if he could not make health care decisions for himself. Extendicare does not propound the health care power of attorney gave Mrs. Simmons the authority to bind Mr. Simmons to the ADR. It argues that by the terms of the ADR, Extendicare was justified in assuming that Mrs. Simmons was authorized to sign the ADR on behalf of Mr. Simmons.

{¶21} Extendicare relies upon the following language in the ADR to demonstrate that Mrs. Simmons had the apparent authority to enter into the ADR:

> If signed by a Legal Representative, the representative certifies that the Center may reasonably rely upon the validity and authority of the Representative's signature based upon actual, implied or apparerr [sic] authority to execute this Agreement as granted by the Resident.

Extendicare argues that by signing the ADR with the above language, Mrs. Simmons certified she had authority to sign the ADR on behalf of Mr. Simmons. A review of the ADR signed by Mrs. Simmons, however, shows that Mrs. Simmons did not sign the form

as a "Legal Representative." The signature page of the ADR form requested the signature of the "Resident", "Legal Representative for Healthcare Decisions", and "Legal Representative for Financial Decisions." Mrs. Simmons signed the ADR form on the signature line for the "Resident." She printed "Harold Simmons" and signed her name, "Ruth Simmons." The signature lines provided for the "Legal Representative" are blank. The clear and unambiguous language of the provision of the ADR as to the certification of authority is applicable if signed by a "Legal Representative." In this case, Mrs. Simmons was not a "Legal Representative" of Mr. Simmons through a power of attorney or by her signature on the ADR form. Extendicare could not have a good faith belief that Mrs. Simmons possessed the necessary authority to bind Mr. Simmons to the ADR. *See Scott*, 2016-Ohio-495 at ¶ 18.

{¶22} Extendicare cites to *Brown v. Extendicare, Inc.*, 2015-Ohio-3059, 39 N.E.3d 896 (2nd Dist.) as support for its claim that Mrs. Simmons had apparent authority to enter into the ADR. In a similar fact pattern, the Eighth District Court of Appeals in *Scott v. Kindred Transitional Care & Rehab.*, 8th Dist. Cuyahoga No. 103256, 2016-Ohio-495, held that a rehabilitation facility resident did not cloak her daughter with apparent authority to bind her to an arbitration agreement, even though her daughter signed the admission papers. In *Scott*, the appellant rehabilitation facility relied upon *Brown* to argue the daughter had apparent authority to enter into an arbitration agreement. The Eighth District Court of Appeals stated in *Scott*:

> *Brown* is fundamentally distinguishable. In that case, there were two separate admissions of the resident. In the first admission, the resident's daughter signed an admission agreement as the resident's legal

representative for healthcare and financial decisions. In the second admission, *the resident herself* signed the admission agreement, which also contained a designation of her daughter as her legal representative for healthcare and financial decisions. Based on these circumstances, the Second District held that the resident herself clothed her daughter with the appearance of authority and knowingly permitted her daughter to act as agent on her behalf.

*Scott* at ¶ 20.

{¶23} In *Scott*, the nursing home resident was listed as the sole financial agent in the admission paperwork. *Id*. at ¶ 21. In the present case, Extendicare has not provided the admission documents for the court's review, other than the ADR. Further, there is no evidence in the record that Mrs. Simmons was ever designated as Mr. Simmons's legal representative.

{¶24} Based on the forgoing analysis, we find Extendicare failed to meet its burden to demonstrate that Mrs. Simmons had apparent authority to bind Mr. Simmons to the terms of the ADR. Because Mrs. Simmons did not have apparent authority to enter into the contract and the ADR is without force and effect as to Mr. Simmons, it is unnecessary to reach the remaining issues of unconscionability and waiver.

{¶25} Extendicare's sole Assignment of Error is overruled.

**CONCLUSION**

{¶26} The judgment of the Delaware County Court of Common Pleas is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Baldwin, J., concur.