[Cite as *114476*, 2025-Ohio-2525.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STEWART D. ROLL,                    :

    Plaintiff-Appellee,            :

                                    No. 114476

    v.                              :

GERTBURG LICATA CO., LPA,            :

    Defendant-Appellant.          :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** July 17, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-989546

---

***Appearances:***

Stark & Knoll Co., L.P.A., Hamiton DeSaussure, Jr., and
Orville L. Reed, III, *for appellee.*

Gertsburg Licata Co. LPA and Louis J. Licata, *for
appellant.*

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant, Gertburg Licata Co., L.P.A., ("appellant") appeals the trial court's denial of its motion to compel arbitration. Finding merit to the

appeal, we reverse the trial court's judgment and remand the case for further proceedings.

{¶ 2} In January 2023, plaintiff-appellee Stewart Roll ("appellee") and appellant executed a promissory note ("Promissory Note") and an agreement ("Agreement") for the purchase of appellee's law practice. The Promissory Note, which outlined appellant's payment obligations, required the firm to make monthly payments to appellee totaling $300,000 over a specified term. The Promissory Note did not contain an arbitration clause. The Agreement, executed contemporaneously with the Promissory Note, governed additional terms of the transaction and included terms regarding alternative dispute resolution.

{¶ 3} Appellee alleges that appellant defaulted on its payment obligations under the Promissory Note. As a result, appellee sent written notice to appellant of its default and demanded payment of the outstanding amount.

{¶ 4} In December 2023, appellee filed suit seeking to enforce the Promissory Note. Appellant moved to stay proceedings and compel arbitration, arguing that the arbitration clause in the Agreement governed all disputes, including those arising under the Promissory Note. The trial court denied appellant's motion, holding that arbitration was not mandatory.

{¶ 5} Appellant appealed, raising two assignments of error, which we will combine for review:

I. The trial court erred in denying [a]ppellant's motion to stay proceedings and compel arbitration.

II. The trial court erred when it found that the parties' agreement to arbitrate disputes "is not mandatory."

{¶ 6} Generally, an appellate court reviews a trial court's decision to grant or deny a motion to compel arbitration for an abuse of discretion. *Smith v. Rezutek*, 2024-Ohio-5599, ¶ 5 (8th Dist.), citing *Simmons v. Extendicare Health Servs., Inc.*, 2016-Ohio-4831 (5th Dist.). An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. The issue of whether a party has agreed to submit an issue to arbitration, however, is reviewed under a de novo standard of review. *Winters Law Firm, L.L.C. v. Groedel*, 2013-Ohio-5260, ¶ 9 (8th Dist.), citing *Shumaker v. Saks Inc.*, 2005-Ohio-4391 (8th Dist.).

{¶ 7} There is a presumption favoring arbitration when the claim in dispute falls within the scope of the arbitration provision. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471 (1998). Thus, "any ambiguities in the language of a contract containing an arbitration provision should be resolved in favor of arbitration." *Taylor v. Ernst & Young, LLP*, 2011-Ohio-5262, ¶ 20. However, "the courts must not 'override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.'" *Pantages v. Becker*, 2018-Ohio-3170, ¶ 8 (8th Dist.), quoting *Taylor* at *id.*

**{¶ 8}** Appellant contends that the trial court erred when it denied its motion to compel arbitration by finding that the Agreement did not mandate arbitration. Appellee's response is two-fold. First, appellee argues that the Promissory Note was an independently enforceable contract with no arbitration clause. Second, appellee argues that the Agreement itself did not mandate arbitration.

**{¶ 9}** As to appellee's initial argument, we note that the Promissory Note was attached to the Agreement, both documents were executed contemporaneously, and the Agreement's text expressly incorporated the Promissory Note. The Agreement stated, in pertinent part:

> **1. Term.** This Agreement shall be effective as of the Effective Date and shall continue for one (1) year, unless otherwise terminated by either party in accordance with the provisions of this Agreement, and subject to any longer periods of time set forth herein or in the promissory note attached hereto and incorporated herein.
>
> . . .
>
> **6. Purchase Price; Payment Terms.** The Firm shall pay to the Senior Partner the sum of three hundred thousand dollars ($300,000) as set forth in, and subject to, this Agreement. Payment shall be made in equal payments of . . . [$8,333] per month, without interest, in accordance with the promissory note attached hereto and incorporated herein . . . .

(Emphasis in original.)

**{¶ 10}** The case appellee cites to support his position that the Promissory Note stands alone as an enforceable contract is distinguishable from this case. In *JDH Mgt. Group, LLC v. Pierce*, 2018-Ohio-706 (12th Dist.), the defendants contracted with plaintiff, a home builder, for the construction of a $1.7 million

house. The construction contract contained an arbitration clause. Almost a year later, the defendants informed the plaintiff that they could not make the final payment. The plaintiff drafted a repayment agreement, which the parties executed. Plaintiff sued when the defendants did not fulfill the repayment agreement. The trial court found that although the repayment agreement did not have an arbitration clause, the agreement and the construction contract were clearly linked and, therefore, the plaintiff waived its right to arbitration under the construction contract when it filed suit to enforce the repayment agreement. *Id.* at ¶ 8.

{¶ 11} The Twelfth District Court of Appeals disagreed, finding that the repayment agreement was a separate enforceable contract. The court reasoned that the plaintiff's action to enforce the repayment agreement arose independently of the construction contract and was not within the purview of the contract's arbitration clause. *Id.* at ¶ 30.

{¶ 12} In this case, the Promissory Note and the Agreement were executed contemporaneously and the Agreement explicitly referenced the Promissory Note. The Promissory Note is subject to the Agreement's terms, including its dispute resolution provisions, whereas the repayment agreement in *JDH Mgt. Group* was executed almost a year after the construction contract and did not reference the construction contract's arbitration clause.

{¶ 13} Because the Promissory Note and the Agreement in this case were executed contemporaneously and the Agreement's text expressly incorporated the

Promissory Note, we conclude that the documents are to be considered in conjunction.

{¶ 14} Next, we consider the trial court's decision that the Promissory Note and Agreement did not mandate arbitration. As mentioned, the Promissory Note did not contain an arbitration clause. The Agreement, however, contained a section on alternative dispute resolution, including the procedure by which the parties could pursue arbitration. The Agreement provided that, should a dispute under the Agreement arise, the parties were required to (1) provide written notice to the breaching party and allow for a five-day cure period, (2) participate in face-to-face negotiations, (3) attend mediation, and, failing those alternatives, (4) consider arbitration.

{¶ 15} The parties do not disagree that proper notice was provided, they participated in face-to-face negotiations, and they tried to mediate the dispute. The parties do dispute, however, whether arbitration was mandatory or at the parties' discretion.

{¶ 16} The Agreement states, in pertinent part:

**13. Dispute Resolution.** If at any time there is a claim or dispute between the parties arising from or relating to this Agreement and performance hereunder, nonbreaching party shall give written notice to the breaching party, after which the breaching party will have five (5) days to cure said breach. If same is not cured, the nonbreaching party will notify the breaching party of same, after which the parties agree that they will, within ten (10) days following receipt of said written notice, engage in face-to-face negotiations to resolve the dispute and shall, upon failing to negotiate a resolution, choose a mutually agreeable third party neutral, who shall mediate the dispute between the parties. Mediation shall be non-binding and shall be confidential.

The parties shall refrain from court and arbitration proceedings during the mediation process insofar as they can do so without prejudicing their legal rights . . . . If the parties are unable to resolve the dispute in good faith within three (3) months of the date of the initial demand by either party, then the claim or dispute shall be finally determined by the arbitration procedures set forth below. *Nothing in this Section obligates either party to pursue arbitration. The Section is intended to provide an alternative forum for dispute resolution if either party elects to do so . . . .*

**14. Choice of Forum/Arbitration.** Subject to the requirements set forth in this Section 14, each party agrees to submit all disputes arising from or relating to this Agreement, including without limitation its interpretation, enforcement, and performance, if not resolved between the parties through their best efforts, to the American Arbitration Association ("AAA") for binding arbitration in accordance with its Commercial Rules of dispute resolution. The forum for the arbitration will be Cuyahoga County, Ohio. The arbitrator shall be empowered to determine the arbitrability of the dispute. Both parties shall equally share the fees of the arbitrator(s). Except as otherwise stated in this Agreement, all disputes required to be submitted to mandatory arbitration shall be so submitted within one (1) year from the date the dispute first arose or shall be forever barred.

(Italics added. Boldface in original.)

{¶ 17} Section 13 expressly states, "Nothing in this Section obligates either party to pursue arbitration. The Section is intended to provide an alternative forum for dispute resolution *if either party elects to do so*." (Emphasis added.) Section 14 states that "each party agrees to submit all disputes arising from or relating to this Agreement . . . to the American Arbitration Association ('AAA') for binding arbitration." When read in conjunction with Section 13, Section 14 indicates the procedure — submitting to the AAA for binding arbitration — should either party choose to arbitrate their dispute.

{¶ 18} The "parties to contracts are presumed to have read and understood them and . . . a signatory is bound by a contract that he or she willingly signed." *Preferred Capital, Inc. v. Power Eng. Group, Inc.*, 2007-Ohio-257, ¶ 10, citing *Haller v. Borror Corp.*, 50 Ohio St.3d 10 (1990). There is no dispute that the parties, an attorney and a law firm, had an opportunity to negotiate the terms of the Agreement before executing the document. By signing the Agreement, the parties were presumed to have read and understood the terms of the contract.

{¶ 19} The Agreement clearly states that although neither party is mandated to pursue arbitration, should either party "elect" to choose arbitration, then the matter is to be submitted to the AAA. When all other alternative dispute resolutions failed, appellant elected to have the dispute arbitrated. Thus, based on appellant's election, the matter herein must proceed to arbitration.[1]

{¶ 20} Considering the foregoing, we find that the trial court erred when it denied appellant's motion to compel arbitration.

{¶ 21} The assignments of error are sustained. Case reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

---

[1] Even if the Agreement were subject to interpretation regarding arbitration, any ambiguities in the language of a contract containing an arbitration provision should be resolved in favor of arbitration. *Taylor*, 2011-Ohio-5262, at ¶ 20.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

EILEEN T. GALLAGHER, P.J., CONCURS;
SEAN C. GALLAGHER, J., DISSENTS (WITH SEPARATE OPINION)


SEAN C. GALLAGHER, J., DISSENTING:

{¶ 22} I respectfully disagree with the majority's resolution of this case. There is nothing clear about the arbitration clause in the parties' agreement, especially as it pertains to the unambiguous language that "[n]othing in [Section 13 of the agreement] obligates either party to pursue arbitration." "Pursue" is a broadly defined term, meaning "'[t]o proceed along or follow, as a specified course, action, plan, etc.[,] . . . to follow a matter in a legal manner . . . .'" *Bryant v. Dayton Casket Co.*, 69 Ohio St.2d 367, 370 (1982), quoting *Webster's New Twentieth Century Dictionary* (2 Ed.). But importantly, it can also mean "to engage in." Merriam-Webster.com, available at https://perma.cc/7BP9-L862. Despite that clear language, Gertburg Licata Co. ("Gertburg") seeks to obligate Roll to engage in arbitration.

{¶ 23} Gertburg's motion to compel arbitration claimed that Roll "violated the arbitration clause by suing" it for the default on the promissory note. In its reply brief and this appeal, Gertburg attempted to deflect from the Section 13 language, claiming that only Section 14 controls. That section provides:

> Subject to the requirements set forth in this Section 14, each party agrees to submit all disputes arising from or relating to this Agreement, including without limitation its interpretation, enforcement, and performance, if not resolved between the parties through their best efforts, to the American Arbitration Association ("AAA") for binding arbitration in accordance with its Commercial Rules of dispute resolution. The forum for the arbitration will be Cuyahoga County, Ohio. The arbitrator shall be empowered to determine the arbitrability of the dispute. Both parties shall equally share the fees of the arbitrator(s). Except as otherwise stated in this Agreement, all disputes required to be submitted to mandatory arbitration shall be so submitted within one (1) year from the date the dispute first arose or shall be forever barred.

Gertburg claims that because that provision discusses mandatory arbitration, arbitration is required based on one party's desire. That interpretation ignores the contractual language that neither party is obligated to arbitrate their dispute.

{¶ 24} "In construing a contract, a court must read and consider the provisions as a whole and not in isolation." *Sanzo Ents., LLC v. Erie Ins. Exchange*, 2021-Ohio-4268, ¶ 36 (5th Dist.), citing *Foster Wheeler Envirespose, Inc. v. Franklin Cty. Convention Facilities Auth.*, 1997-Ohio-202. Section 13 expressly establishes that Section 14 applies "[i]f the parties are unable to resolve the dispute in good faith within three (3) months of the date of the initial demand by either party."[2] Section 14 is thus dependent on Section 13 and cannot be read in isolation to create a mandatory arbitration requirement. In this case, Roll elected to file a breach-of-contract action on the promissory note, which was well within his

---

[2] The motion to compel arbitration was filed on February 23, 2024, less than three months after the December 5, 2023 filing of the complaint. Roll demanded payment on December 2, 2023, declaring Gertburg to be in default of the promissory note.

contractual rights. The agreement expressly provides that he is not obligated to pursue arbitration, which is merely an option available to the aggrieved party.

{¶ 25} Had Gertburg desired to make the election of arbitration a mandatory proposition, it should not have agreed to the limiting language that neither party is obligated to pursue, i.e., engage in, arbitration. The language at issue differs from contractual language that generally offers either party the ability to elect arbitration, in which case the other party can be compelled to arbitrate the matter upon the moving party's election. *See, e.g., Mayfield Auto Group, LLC v. JS Mayfield Partners, LLC*, 2024-Ohio-3105, ¶ 25 (8th Dist.) (concluding that compelling arbitration was appropriate because the contract provided that "either party may elect" arbitration, and after electing to arbitrate, the other party "shall . . . appoint a second person as arbitrator"). In this case, although either party retains the right to pursue arbitration, neither party can be compelled to it. At best, the two provisions create ambiguity that Gertburg has not attempted to clarify.

{¶ 26} In light of this particular contract, I would affirm the decision of the trial court.